**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

THERON COLLINS, as Personal
Representative of the Estate of
CATHERINE COLLINS, Deceased,

        Plaintiff,

vs.                                     Case No. 3:08-cv-923-J-32JRK

UNITED STATES OF AMERICA,

        Defendant.

---

**ORDER**

Plaintiff has violated the Rule 26 requirements regarding timely and complete expert reports. The question presented is whether the violation is serious enough to warrant excluding the expert from testifying, effectively meaning Plaintiff's case is over.

This medical malpractice action against the United States, brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), et seq., is before the Court on the United States' Motion for Summary Judgment (Doc. 20). The Defendant has filed a response (Doc. 28), to which the United States has filed a reply (Doc. 36). The Court heard oral argument at a hearing on August 10, 2010, the record of which is incorporated by reference (Doc. 38).

**I.     Background**

The Complaint alleges that on or about February 20, 2005, Decedent presented to the Naval Hospital of Jacksonville's Acute Care Clinic, a facility owned and operated by the United States, with complaints of fatigue, headaches, fever, body aches, extreme chills,

malaise, and a cough.  Doc. 1 at ¶¶ 7, 13.  Plaintiff contends that although these symptoms

are suggestive of bacterial meningitis, the health care providers at the Acute Care Clinic

failed to order labs or other diagnostic tests which might have informed such a diagnosis.

Id. ¶¶ 13, 16.  Rather, Decedent was diagnosed with and treated for the flu, and was sent

home. Id. ¶¶ 13-16.  On February 22, 2005, Decedent returned to the Naval Hospital with

advancing symptoms, and was in fact diagnosed with and treated for bacterial meningitis.

However, Decedent's condition proved to be irreversible; she was pronounced brain dead

and ultimately passed after a short hospital stay.  Id. ¶ 22.  Plaintiff contends that the health

care providers at the Acute Care Clinic deviated from the standard of care by failing to

properly diagnose and treat Decedent's bacterial meningitis on February 20, which delay

proximately caused her injuries and resulting death.[1]  Id. ¶¶ 18, 22-24.

On September 14, 2009, Plaintiff provided the United States with a Rule 26(a)(2)

Disclosure of Expert Witness, which disclosed only one medical expert: Dr. Bruce Hirsch,

a Board Certified physician in internal medicine and infectious disease.  See Doc. 20-2.[2]

Plaintiff's Disclosure stated, in relevant part:

> Dr. Hirsch is expected to testify about the medical care and treatment provided
> to Catherine Collins, deceased, and the negligence/breach of the prevailing

---

[1]   Although the Complaint is directed generally to care provided between February 20, 2005 and March 1, 2005, the parties are in agreement that Plaintiff's allegations of negligence are directed solely at the care and treatment Decedent received during her February 20, 2005 visit to the Acute Care Clinic.

[2]   The Court's Case Management and Scheduling Order originally established August 17, 2009 as the date to serve Plaintiff's expert reports.  See Doc. 6.  On August 26, 2009, the parties agreed to extend this deadline by thirty days, making Plaintiff's expert reports due on September 16, 2009.  Doc. 20 at 4.

standard of care by the health care providers at the Naval Hospital Jacksonville that proximately caused the injuries and wrongful death of Catherine Collins, and other issues raised in the Complaint and Answer thereto.  A copy of Dr. Hirsch['s] written report and opinions are attached as Exhibit "A."

Id. at 1.  Dr. Hirsch's attached report, which was dated June 9, 2006 and styled as an affidavit,[3] did not specifically address the Decedent's February 20, 2005 visit to the Acute Care Clinic, nor did it assert that, within a reasonable degree of medical certainty/probability, the actions or omissions of the Acute Care Clinic's health care providers on that date violated any standard of care or proximately caused Decedent's death.  See Doc. 20-3.  Rather, Dr. Hirsch opined that the "health care providers at the Naval Hospital of Jacksonville" were negligent for not having provided Decedent, who suffered from diabetes mellitus, with the pneumococcal vaccination at some point during one of her many prior visits to the facility, and that Decedent "died from a complication which would have been prevented by Pneumococcal vaccination."  Id. ¶ 7.

The United States provided its Rule 26(a)(2) disclosure on October 16, 2009, disclosing two experts, Dr. Gregory Moran and Dr. Karen Roos.  See Doc. 20-5.  In a report dated October 13, 2009, Dr. Moran opined that the standard of care had been met during the Decedent's February 20, 2005 visit to the Acute Care Clinic.  See Doc. 20-6.  In a report dated September 27, 2009, Dr. Roos opined that (1) Decedent's cause of death was a stroke; (2) that the stroke may or may not have been a complication of pneumococcal

---

[3]     Dr. Hirsch's affidavit was originally provided to the United States as part of a required administrative claim prior to the initiation of the instant litigation.  On September 14, 2009, Plaintiff re-submitted the very same affidavit - with no changes - as Dr. Hirsch's Rule 26 expert report.

meningitis, and may instead have resulted from a cardioembolic source; and (3) that a pneumococcal vaccination would not automatically prevent a person from contracting the condition in any event. See Doc. 20-7. Plaintiff did not provide any expert rebuttal reports.

Plaintiff deposed Dr. Moran on February 25, 2010 and Dr. Roos on March 18, 2010; both testified consistent with their reports. See Docs. 20-8, 20-9. Curiously, Plaintiff did not question Dr. Roos on her opinion that a pneumococcal vaccination would not necessarily have prevented Decedent's meningitis, despite this being the only issue raised by Dr. Hirsch's affidavit. Rather, Plaintiff's questions to Drs. Moran and Roos dealt almost exclusively with the symptomology of and tests for bacterial meningitis, as well as Decedent's February 20, 2005 Acute Care Clinic visit. As a result, the United States concluded that Plaintiff's claims centered on the care provided to Decedent at the Acute Care Clinic on February 20, 2005 rather than a failure to provide her with the vaccination, and on this basis elected not to depose Dr. Hirsch.[4] Plaintiff also did not depose Dr. Hirsch. On March 30, 2010, discovery closed. Thereafter, the United States filed its motion for summary judgment, claiming that Dr. Hirsch's failure to opine concerning the February 20,

---

[4]   This conclusion was bolstered by Plaintiff's Answers to Defendant's First Set of Interrogatories, which were served upon the United States on March 18, 2010. See Doc. 20 at 7. In response to Interrogatory No. 2, which asked Plaintiff to identify the specific act or omission which allegedly constituted negligence on the part of the United States, Plaintiff addressed only the care and treatment Decedent received at the Acute Care Clinic on February 20, 2005, and the failure of the Clinic's medical personnel to test Decedent for and diagnose her with bacterial meningitis. Doc. 20-1 at 5. Likewise, in response to Interrogatory No. 7, which asked Plaintiff to identify the alleged cause of Decedent's death, Plaintiff referenced his response to Interrogatory No. 2 and further stated that Decedent's death resulted from the Acute Care Clinic personnel's failure to "examine, test, and diagnose for bacterial meningitis and thereafter[ ] provid[e] an appropriate course of treatment." Id. at 10.

2005 Acute Care Clinic visit meant Plaintiff had failed to establish the essential elements of his medical malpractice claim.  Doc. 20.

Plaintiff filed a response in opposition to the United States' motion for summary judgment, attaching as an exhibit a document entitled "Plaintiff's Rule 26(E)(1)(A) Supplemental Disclosure of Expert Witness Affidavit."  Doc. 31-2.  The "Supplemental Disclosure" is in fact a revised version of Dr. Hirsch's 2006 affidavit, bearing a date of June 8, 2010.  The only material difference between the 2006 and 2010 affidavits is the addition of two general opinions that the failure of the health care providers at Naval Hospital of Jacksonville to investigate, diagnose and treat "[Decedent's] condition" deviated from the standard of care, and that such negligence caused her death.  See id. ¶ 7; c.f. Doc. 20-3 ¶ 7.  Neither the date and circumstances of this alleged failure nor the condition in question were addressed in this "supplemental" affidavit, and Dr. Hirsch's original opinions regarding the pneumococcal vaccine, though apparently no longer providing a basis for Plaintiff's claim, were left unchanged.

Upon review of Plaintiff's response and Dr. Hirsch's supplemental affidavit, the Court directed the United States to file a reply, vacated all remaining case deadlines, and removed the case from the Court's trial calendar.  See Doc. 34.  In its reply, the United States contended that: (1) Dr. Hirsch's late-filed supplemental affidavit should be stricken as an improper Rule 26(e)(1)(A) supplement; (2) even if it were proper, summary judgment would still be appropriate because the supplemental affidavit provides no specific opinions as to how the standard of care was violated on February 20, 2005, and how such violations caused Decedent's death; and (3) allowing Dr. Hirsch to offer those opinions for the first time

at trial when they had never been addressed in either version of his expert report would contravene both Rule 26(a)(2)(B) and Rule 37(a)(1).  See Doc. 36 at 2-7.

The Court heard oral argument on these issues on August 10, 2010.  Counsel for the United States stated that as the litigation progressed, it had become clear that Plaintiff's claims turned on whether the Acute Care Clinic personnel violated the standard of care by failing to diagnose Decedent with bacterial meningitis on February 20, 2005, and whether such failure resulted in her death.  Despite this, the United States had determined based on Dr. Hirsch's Rule 26 report that Plaintiff did not have an expert witness who could properly opine as to these issues.  The United States therefore made the tactical decision not to depose Dr. Hirsch, and asked Drs. Moran and Roos to offer their opinions about the Acute Care Clinic visit out of an abundance of caution.  This left Plaintiff in the unenviable position of litigating a medical malpractice case about Decedent's Acute Care Clinic visit without any expert opinions to controvert those of Dr. Moran and Dr. Roos on the subject.

Plaintiff's counsel conceded at oral argument that without Dr. Hirsch's expert opinions about the Acute Care Clinic visit, Plaintiff's claims are unlikely to survive summary judgment. Accordingly, a ruling that Dr. Hirsch's report(s) do not provide a proper basis for such testimony would, in essence, effect a dismissal of Plaintiff's case.  To avoid such a drastic result, Plaintiff's counsel requested leave to file a second amended report, within which Dr. Hirsch would opine that: (1) the symptoms with which Decedent presented to the Acute Care Clinic on February 20, 2005 were consistent with bacterial meningitis; (2) the Acute Care Clinic personnel failed to conduct proper testing to diagnose and treat the meningitis; and (3) such failure caused her injuries and resulting death.

6

At the Court's request, Plaintiff proffered the Proposed Amended Report of Dr. Hirsch, which offers opinions consistent with the representations of Plaintiff's counsel at oral argument.  See Doc. 43-1.  Dr. Hirsch's newfound standard of care and causation opinions are, of course, directly at odds with those offered by Dr. Moran and Dr. Roos.  Thus, the question is whether Plaintiff can introduce Dr. Hirsch's late-filed Proposed Amended Report - which would allow the case to proceed on the merits - or whether Plaintiff's failure to timely disclose the report mandates summary judgment in favor of the government.

## II.    Discussion

Rule 26(a)(2)(B) requires that a party's expert witness disclosure be accompanied by a written report which must contain, inter alia, "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B).  The Court finds without much difficulty that Dr. Hirsch's affidavits of June 9, 2006 and June 8, 2010 (Docs. 20-3, 31-2) fall short of the requirements of Rule 26.[5]  Failure to disclose the

---

[5]    Parties must "disclose all bases of their experts' opinions and [ ] supplement timely their expert disclosures upon discovery of an omission." Mitchell v. Ford Motor Co., 318 Fed. App'x. 821, 824 (11th Cir. 2009).  While in the typical case the Court gives some leeway concerning this requirement owing to the realities of litigation, this case presents a total Rule 26(a)(2) failure.  Neither Dr. Hirsch's initial nor the supplemental affidavit set forth an opinion that would support any testimony regarding the standard of care and causation issues in this case. Further, Plaintiff's submission of Dr. Hirsch's supplemental affidavit was an improper attempt to amend an inadequate Rule 26 report.  Plaintiff's reliance on Rule 26(e)(1)(A), which requires a party to amend or correct a disclosure discovered to be either incomplete or incorrect in some material respect, is therefore misplaced.  See Fed. R. Civ. P. 26(e)(1)(A);  Goodby's Creek, LLC v. Arch Ins. Co., 2009 WL 1139575, *2 (M.D. Fla. 2009)(finding that Rule 26(e) "does not cover failures of omission because the expert did an inadequate or incomplete preparation," and that such an interpretation of 26(e) would allow parties to inappropriately "produce information in a belated fashion" and "add to [the expert's original] opinions.")(quotations omitted).

basis for expert witness testimony pursuant to Rule 26(a) subjects a party to sanctions under

Rule 37(c)(1), which provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that information or witness to supply evidence* on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court*, on motion and after giving an opportunity to be heard:
> . . .
> (C) *may impose other appropriate sanctions*, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1) (emphasis added).

Thus, under Rule 37, the Court has discretion to sanction a party who fails to provide

information required by Rule 26. See Parrish v. Freightliner, LLC, 471 F.Supp.2d 1262, 1268

(M.D.Fla. 2006).  The United States argues that Plaintiff's failure to timely provide a proper

expert report for Dr. Hirsch was neither substantially justified nor harmless, and that the

Court should therefore sanction Plaintiff by excluding Dr. Hirsch's Proposed Amended

Report.

Plaintiff contends that exclusion would be inappropriate because: (1) the Proposed

Amended Report works no surprise against the United States, which certainly knew that the

case was about the February 20, 2005 Acute Care Clinic visit and had in fact asked its

experts to offer opinions on the subject; (2) Plaintiff can readily cure any surprise because

the case has been removed from the trial calendar; (3) introduction of the evidence would

not disrupt the trial because the case is not at or near that stage; (4) any failure to properly

disclose was not the result of bad faith on the part of Plaintiff.[6]  In addition, there is no question as to the importance of the evidence Dr. Hirsch would provide - the sanction of exclusion would be fatal to Plaintiff's case.

The Court is not prepared to find Plaintiff's failure to comply with Rule 26 either substantially justified or harmless.  First, Plaintiff's counsel has offered no justification whatsoever for their failure to provide an adequate report.  Second, although Drs. Moran and Roos offered certain opinions about Decedent's Acute Care Clinic visit, they did so without the benefit of a proper opposing expert report on the subject and instead relied solely upon an independent review of the medical records to determine the issues they thought Plaintiff might raise.  In addition, as counsel for the United States has argued, a finding that Plaintiff's Rule 26 violation was harmless would unfairly punish her client for an entirely appropriate use of the Federal Rules of Civil Procedure.

However, "the Court vastly prefers to decide cases on their merits." Demasi v. United States, No. 3:09-cv-868-J-32JRK, Doc. 22 at 4 (M.D. Fla. Nov. 4, 2010).  Punishing Plaintiff for the sins of his counsel by effectively closing the door on Plaintiff's claim is something the Court is neither inclined nor required to do.  Even if the Court finds that Plaintiff's failure to

---

[6]   "[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." Two Men and a Truck Int'l, Inc. v. Residential & Commercial Transp. Co., LLC, 2008 WL 5235115, *2 (N.D. Fla. 2008)(quoting Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

produce an adequate report was neither substantially justified nor harmless, the sanction

of exclusion is not mandatory.  Whetstone Candy Co., Inc. v. Nestle USA, Inc., 2003 WL

25686830, *3 (M.D.Fla. 2003).[7]  Rather, this Court has discretion to formulate the best

penalty for the failure to disclose.  Id. (citing Roberts v. Galen of Va., Inc., 325 F.3d 776, 784

(6th Cir. 2003)).  "Without a finding of bad faith or gamesmanship on the eve of trial, many

courts are loathe to invoke the strong medicine of precluding expert testimony."  McClain v.

Metabolife Int'l, Inc., 193 F.Supp.2d 1252, 1259 (N.D.Ala. 2002).  "In fact, the refusal to

impose a lesser penalty can amount to an abuse of discretion," especially where, as here,

the sanction of exclusion would likely leave Plaintiff without an avenue to assert his FTCA

claims.  Whetstone, 2003 WL 25686830 at *3 (citing Dura Auto. Sys. of Ind., Inc. v. CTS

Corp., 285 F.3d 609, 616 (7th Cir. 2002)); see also Waters v. Martin County, Fla., 9 F.3d

924, 933-34 (11th Cir. 1993)(stating that while district courts "have broad powers under the

rules to impose sanctions . . . , dismissal is justified only in extreme circumstances and as

a last resort.")

        Under all the circumstances, the exclusion of Dr. Hirsch's expert opinions, as now

documented by his Proposed Amended Report, would be too drastic a sanction in this case.

However, it is apparent that some form of sanction is both necessary and appropriate

-----

        [7]    The evidentiary exclusion sanction is not necessarily "automatic," even in the absence
of substantial justification and harmlessness, because Rule 37(c)(1) provides that a court
may impose other appropriate sanctions "[i]n addition to *or instead of* this sanction."  Fed.
R. Civ. P. 37(c)(1)(emphasis added); see also Design Strategy, Inc. v. Davis, 469 F.3d 284,
298 (2d Cir. 2006); Roberts, 325 F.3d at 784. Eleventh Circuit caselaw is in accord with this
interpretation of Rule 37(c)(1).  See Prieto v. Malgor, 361 F.3d 1313, 1318 (11th Cir.
2004)("The district court may impose other appropriate sanctions in addition to *or in lieu of*
the [Rule 37(c)(1)] evidentiary sanction.")(emphasis added).

pursuant to Rule 37(c)(1)(C).[8]   As a result, the United States, if it so chooses, will be permitted to obtain amended reports from Drs. Moran and Roos in response to Dr. Hirsch's Proposed Amended Report, with reasonable associated costs to be borne by Plaintiff's counsel.   In addition, the United States is permitted to depose Dr. Hirsch on his new opinions, with reasonable associated costs to be borne by Plaintiff's counsel.   The United States, should it decide to do so, is further permitted to re-depose Drs. Moran and Roos, again with reasonable costs to be borne by Plaintiff's counsel.[9]

Accordingly, it is hereby

**ORDERED**:

1.      The United States' Motion for Summary Judgment (Doc. 20) is **DENIED WITHOUT PREJUDICE.**

2.      Discovery is reopened to the limited extent described herein.   The discovery permitted by this Order will be completed **no later than January 15, 2011.**

3.      **No later than February 15, 2011**, the United States may, if appropriate, file a renewed motion for summary judgment.

4.      This case will be set on the June 2011 trial calendar.

---

[8]   In fact, at oral argument, Plaintiff's counsel assented to the potential imposition of alternative sanctions if the Court allowed Dr. Hirsch's Proposed Amended Report to be considered.

[9]   At the appropriate time, the United States  should file its request for cost reimbursement allowed under this Order.  The Court will then determine how much Plaintiff's counsel are required to pay.

**DONE AND ORDERED** at Jacksonville, Florida this 9th day of November, 2010.

TIMOTHY J. CORRIGAN
United States District Judge

jmm.

Copies:
counsel of record